MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2023 ME 72
Docket:         Aro-23-1
Argued:         October 4, 2023
Decided:        November 21, 2023

Panel:          STANFILL, C.J., and JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

ADRIAN COVINGTON

HORTON, J.

[¶1]  Adrian Covington appeals from a judgment of default and forfeiture of $17,815 in cash bail, *see* 15 M.R.S. § 1094 (2023), entered after the trial court (Aroostook County, *Nelson, J.*) denied his motion to set aside the forfeiture of that portion of his deposited cash bail.  He contends that the court abused its discretion in denying his motion because the bail bond did not, on its face, warn him of forfeiture as a possible consequence for violating the condition of his release that he commit no criminal act.  We affirm the judgment because a publicly available statute authorized the forfeiture, *see id.*; the bail bond stated that it was secured by Covington's cash; and the bail commissioner certified that the commissioner had explained Covington's obligations to him.

## I. BACKGROUND

[¶2]  The facts are procedural and are drawn from the trial court record. In January 2020, Covington was charged by criminal complaint with six crimes, including aggravated attempted murder and assault, alleged to have occurred on or about January 11, 2020.  The court (*Soucy, J.*) entered an order committing Covington to the Aroostook County Jail and setting bail at $250,000.  Ultimately, the State dismissed the charges of aggravated attempted murder and added charges of robbery and elevated aggravated assault, resulting in a July 2020 indictment on seven charges.[1]  The order of commitment was amended repeatedly, resulting in a decrease in the amount of cash required to be posted for bail.

[¶3]  On April 7, 2021, a bail commissioner issued a bail bond, signed by both Covington and the bail commissioner.  The bail bond indicated that the bond was "**SECURED**" by $20,000 in cash posted by Covington for his release from custody:

---

[1] The indictment charged Covington with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(1) (2023); reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211, 1604(5)(A) (2023); two counts of assault (Class D), 17-A M.R.S. § 207(1)(A) (2023); two counts of robbery (Class A), 17-A M.R.S. §§ 651(1)(E), 1604(3) (2023); and elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2023).  Although the indictment mistakenly cited statutes that had been repealed and replaced before the time of the criminal conduct alleged, we cite the applicable statutes in this footnote.  *Compare* 17-A M.R.S. § 1252(4), (5) (2018) *with* 17-A M.R.S. § 1604(3), (5)(A); *see* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019).

**SECURED.**  To be released from custody the following property is being posted.  The property is:

Cash in the amount of $20000—

The bond included the following provision:

> **I agree to obey the following conditions of my release so long as this bail bond remains in effect.**  I understand that it is a crime for me to violate any of these conditions, and that if I violate these conditions I will be subject to arrest, jail and/or a fine.

As a standard condition required of anyone released on bail, Covington affirmed, "I will commit no criminal act . . . ."  *See* 15 M.R.S. § 1003(1)(A) (2023); 15 M.R.S. § 1026(1) (2020).[2]  The court-ordered conditions of release, with which Covington agreed to abide, disallowed the posting of cash surety by a third party, and the bond indicated that none of the cash had been posted by a third party.  Covington signed the bond under the affirmation, "**I have read and**

---

[2] Title 15 M.R.S. § 1003(1)(A) (2023) defines "bail," in the preconviction context, to mean "the obtaining of the release of the defendant upon an undertaking that the defendant shall appear at the time and place required *and* that the defendant shall conform to each condition imposed in accordance with section 1026 that is designed to ensure that the defendant shall *refrain from any new criminal conduct*, to ensure the integrity of the judicial process and to ensure the safety of others in the community."  (Emphasis added.)  Title 15 M.R.S. § 1026(1) (2020)—the statute in effect when the bail bond was issued—required that any order for pretrial release of a defendant "must include . . . the condition[] that the defendant refrain from new criminal conduct."  We cite an earlier version of section 1026 because that statute was amended repeatedly after the issuance of the bail bond in this matter.  *See* P.L. 2021, ch. 397, §§ 2-6 (effective Oct. 18, 2021) (codified as subsequently amended at 15 M.R.S. § 1026(3)-(5) (2023)); P.L. 2021, ch. 608, §§ C-1, C-2 (effective Aug. 8, 2022) (codified at 15 M.R.S. § 1026(5), (7) (2023)); P.L. 2021, ch. 647, §§ B-9, B-10 (effective Jan. 1, 2023) (codified at 15 M.R.S. § 1026(1), (4) (2023)); P.L. 2023, ch. 299, § 2 (effective Oct. 25, 2023) (to be codified at 15 M.R.S. § 1026(3)); P.L. 2023, ch. 405, §§ E-1, E-2 (effective Oct. 25, 2023) (to be codified at 15 M.R.S. § 1026(3)).

4

**I understand all my obligations under this bond.**" The bail commissioner who signed the bond affirmed, "I have explained the defendant's . . . obligations under this bond on this date," and Covington initialed that he had received a copy of the conditions of his release.

[¶4] On April 11, 2022, the State moved to revoke Covington's bail and sought forfeiture of his $20,000 in cash on the ground that he had committed new criminal conduct, including by assaulting multiple police officers. On June 13, 2022, the court entered an agreed-upon order granting the State's motion to revoke Covington's bail, and, after hearing arguments, it ordered the forfeiture of the $20,000 as required by 15 M.R.S. § 1094 and denied Covington release on bail. Covington appealed from that order to a single justice of the Maine Supreme Judicial Court (*Mead, J.*), who affirmed the order. *See* 15 M.R.S. § 1097(3) (2023).

[¶5] Covington timely moved to set aside the forfeiture of the cash, *see* M.R.U. Crim. P. 46(g)(2)-(3), arguing that justice did not require the forfeiture because Covington—who was incarcerated without bail—would not be missing any court dates and because the forfeiture would cause a financial hardship to him and the family members who loaned him money for bail, who believed that there would be no forfeiture if Covington appeared in court. The

court held a hearing on the motion on December 9, 2022. Covington presented testimony from his wife that she had contributed $2,185 in funds to Covington's deposited cash bail, believing from what Covington had told her that it would be returned if he attended all court hearings. Covington argued that it was unjust to allow any forfeiture because the bail bond did not mention forfeiture as a possible consequence of a violation of the condition that he not commit any further criminal acts.

[¶6] The court entered a judgment on December 12, 2022, determining that justice did not require forfeiture of the $2,185 of Covington's bail that his wife had contributed. The court granted the motion for relief as to the $2,185, "on the condition that those funds be returned" to Covington's wife, but it denied the motion as to the remaining $17,815 because there was "no evidence that Mr. Covington was misled by a representative of the State regarding how bail works or informed . . . that the only way there was a risk of forfeiture was from a failure to appear." The court reasoned that the law presumed Covington to know that 15 M.R.S. § 1094 required forfeiture upon the violation of a bail condition.

[¶7] Covington appealed to us by filing a notice of appeal on December 27, 2022. With the appeal pending, we authorized the trial court to

6

enter a final judgment on the forfeiture and accepted Covington's appeal as an appeal from that judgment. *See State v. Williams*, 1999 ME 82, ¶ 5, 730 A.2d 677; 15 M.R.S. § 2115 (2023).

## II. DISCUSSION

[¶8] The Maine Bail Code provides, "When a defendant who has been admitted to . . . preconviction . . . bail in a criminal case . . . has violated the conditions of release, the court shall declare a forfeiture of the bail."[3] 15 M.R.S. § 1094. Section 1094 authorizes the Supreme Judicial Court to adopt rules governing the enforcement of a defendant's obligations, and those rules "must provide for notice to the defendant . . . of the consequences of failure to comply with the conditions of bail." *Id.*

[¶9] Rule 46 of the Maine Rules of Unified Criminal Procedure, adopted by the Supreme Judicial Court, provides that "[t]he procedure governing preconviction . . . bail for a defendant is generally provided by statute." M.R.U. Crim. P. 46(a). As required by section 1094, the Rule goes on to provide notice of the consequence of forfeiture if a defendant breaches a condition in a bond,

---

[3] Although Covington is correct that "[i]n some states, a defendant does not forfeit bail for the breach of a condition of release other than an appearance condition," 8 C.J.S. Bail § 229 (Westlaw updated Aug. 2023), Maine is not among those states.

and it authorizes a court to set aside a forfeiture if justice does not require the forfeiture:

> **(g) Forfeiture.**
>
> (1) *Declaration.* If there is a breach of condition of a bond, the court shall declare a forfeiture of the bail and give notice to the defendant and the person who has agreed to act as surety or deposited cash bail.
>
> (2) *Setting Aside.* The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.
>
> . . . .

M.R.U. Crim. P. 46.

[¶10] Regarding the contents of the bail bond itself, the statute in effect when the bail commissioner issued the bond provided that "[i]n a release order . . . the judicial officer shall . . . [a]dvise the defendant of . . . [t]he penalties for and consequences of violating a condition of release, including the immediate issuance of a warrant for the defendant's arrest." 15 M.R.S. § 1026(5)(B)(2). As defined in 15 M.R.S. § 1003(8), "judicial officer" includes a bail commissioner.

[¶11] Covington argues that, particularly because he and those who gave him money for bail are not professional bondspeople, the court should have set aside the forfeiture in full in the absence of a bail bond providing explicit notice

of the possibility of forfeiture.[4]  He argues that the court should have applied basic contract law principles to the bail bond such that the consequences for violating conditions of release are limited to those stated in the bond.

[¶12]  We review for an abuse of discretion a ruling on a motion to set aside a forfeiture.  *See State v. Ellis*, 272 A.2d 357, 360 (Me. 1971).  In reviewing a decision for an abuse of discretion, we consider three issues: "(1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness."  *Marks v. Marks*, 2021 ME 55, ¶ 15, 262 A.3d 1135 (quotation marks omitted).

[¶13]  Although we have not explicitly stated so before, the statutory scheme and Rule 46(g) of the Maine Rules of Unified Criminal Procedure make clear that the defendant has the burden of proof and burden of persuasion on

---

[4]  The Judicial Branch's current form for bail bonds—updated in October 2021—does include notice of this consequence:

WARNING: Your cash or surety bail may be ordered forfeited if you fail to appear or if you violate any of the conditions of release in this case.  The reason(s) for requiring surety or cash bail or the potential forfeiture of this bail are failing to appear as ordered in this case, prior history of failing to appear, violation of any of the conditions of release on this bond, prior history of violating conditions of release in this case or others, or failure to abide by court orders.

the motion to set aside a forfeiture. *See* 15 M.R.S. § 1094; M.R. Civ. P. 46(g); *see also United States v. Gil*, 657 F.2d 712, 716 (5th Cir. 1981); *State v. Ventura*, 952 A.2d 1049, 1055 (N.J. 2008); *Allegheny Mut. Cas. Co. v. State*, 368 A.2d 1032, 1034 (Md. Ct. Spec. App. 1977); *People v. United Bonding Ins. Co.*, 77 Cal. Rptr. 310, 313 (Cal. Ct. App. 1969). Because a defendant bears the burden of proof on a motion to set aside a forfeiture, a defendant challenging a court's factual findings in ruling on such a motion must show that the record *compelled* a different finding. *See State v. Norris*, 2016 ME 37, ¶ 14, 134 A.3d 319 (stating that, when the defendant has the burden of proof and the fact-finder decides that the defendant did not meet that burden, we "will disturb that finding only if the record compels a contrary conclusion" (quotation marks omitted)).

[¶14] Covington is correct that we regard a bail bond as a contract. *See Ellis*, 272 A.2d at 358 ("Upon the execution of the bail bond a contract arose between the State of Maine and the [third parties], by the terms of which the [third parties] undertook to guarantee the appearance of [the defendant] . . . ."); *State v. Willette*, 402 A.2d 476, 478 (Me. 1979) (assessing the admissibility of evidence that a defendant was "out of State in violation of his bail bond contract"); *State v. Burnham*, 44 Me. 278, 283-84 (1857) ("A recognizance is a contract entered into by the recognizors, on certain conditions therein

specified."). Like other contracts, the contract memorialized in a bail bond is "made with reference to and subject to existing law, and every law affecting the contract is read into and becomes a part thereof." *State v. Hurley*, 270 N.W.2d 915, 917 (Neb. 1978); *see All Star Bail Bonds, Inc. v. Eighth Jud. Dist. Ct.*, 326 P.3d 1107, 1110 (Nev. 2014) ("The statutes governing bail bonds are . . . incorporated into the agreement of the parties."); *Gilman v. Gilman*, 956 P.2d 761, 767 (Nev. 1998) (explaining that "[p]arties are presumed to contract with reference to existing statutes," and thus, "[a]pplicable statutes will generally be incorporated into the contract"); *cf. State v. Spring*, 176 S.W.2d 817, 817 (Tenn. 1944) ("A bond is to be construed according to its terms, unless those terms conflict with some statutory provision as to its contents.").

[¶15] In *State v. LeBlanc-Simpson*, 2018 ME 109, ¶ 16, 190 A.3d 1015, we interpreted a bail statute to be incorporated into a pretrial order setting forth conditions for the defendant's release. There, we construed the statute establishing that a condition of release is effective and enforceable "as of the time the judicial officer sets the condition, unless [a] bail order expressly excludes it from immediate applicability." 15 M.R.S. § 1026(7); *see LeBlanc-Simpson*, 2018 ME 109, ¶ 1, 190 A.3d 1015. We held that the "order introduced in evidence contained no such exclusion and thus, by law, was

effective when entered at the initial appearance hearing." *LeBlanc-Simpson*, 2018 ME 109, ¶ 16, 190 A.3d 1015. Even though the effective date of the conditions was not explicitly stated in the order, we held that the statutory provision applied. *See id.* ¶¶ 6-7, 16.

[¶16] Section 1094 conveyed to Covington the consequence of forfeiture if he violated a condition of release. Furthermore, given the bail bond's use of the term "**SECURED**" in advance of all of the conditions of release, it is clear on the face of the bail bond that the $20,000 was posted as security for Covington's compliance with all of the conditions that follow, including the second enumerated condition, which required Covington to refrain from committing any other criminal act. In this context, the term "secure" carries its ordinary meaning: "to make sure or certain; guarantee; ensure, as with a pledge [to *secure* a loan with collateral]." *Secure*, Webster's New World College Dictionary (5th ed. 2016).

[¶17] The $20,000 thus served as the collateral for Covington's compliance with the bail conditions; when he violated those conditions, he forfeited the $20,000 that secured the bail bond, except to the extent that the court decided to set the forfeiture aside under Rule 46(g). *See* 15 M.R.S. §§ 1003(1)(A), 1026(1), 1094. The collateral is precisely what secured

12

Covington's agreement to comply with the conditions of release, and the loss of that collateral was therefore a potential consequence for his breach of a condition.

[¶18]  Furthermore, there is no evidence that any judicial officer failed to advise Covington in accordance with section 1026(5)(B)(2).  To the contrary, the bail bond included a bail commissioner's certification, "I have explained the defendant's . . . obligations under this bond on this date," and there has been no suggestion of any misrepresentation or omission in the commissioner's explanation of the bond to Covington.[5]

[¶19]  Although Covington cites *LeBlanc-Simpson* in arguing that all consequences for violating bail conditions must be stated on the face of the bail bond contract, we did not hold in *LeBlanc-Simpson* that every provision of law governing conditions of release must be included on the face of the document containing those conditions.  2018 ME 109, ¶¶ 6-7, 20-24, 190 A.3d 1015.  We held only that, when the person subject to a bail condition did not sign a bail bond acknowledging it, the State must prove that the person had notice of the

---

[5]  Covington did not offer evidence that he lacked actual notice that the sum would be forfeited if he committed a criminal act in violation of his conditions of bail.  *See United States v. Gil*, 657 F.2d 712, 716 (5th Cir. 1981); *State v. Ventura*, 952 A.2d 1049, 1055 (N.J. 2008); *Allegheny Mut. Cas. Co. v. State*, 368 A.2d 1032, 1034 (Md. Ct. Spec. App. 1977); *People v. United Bonding Ins. Co.*, 77 Cal. Rptr. 310, 313 (Cal. Ct. App. 1969).

condition for the person to be convicted of violating it.[6]  *Id.* ¶¶ 20-24.  The bail condition at issue in *LeBlanc-Simpson* was a no-contact condition specific to the defendant, not a statutory provision incorporated as a matter of law into the bail contract.  *Cf. id.* ¶¶ 6, 21.  Further, unlike the defendant in *LeBlanc-Simpson*, Covington does not contest the provision of notice of his conditions of release. Rather, he claims that he lacked notice of a statutory consequence of violating his conditions of release.  Finally, in contrast to the defendant in *LeBlanc-Simpson*, Covington signed the bail bond and agreed to abide by all of his conditions of release.  *Cf. id.* ¶ 7.

[¶20]  The bail bond itself, the bail statutes, and the court rule were adequate to support the court's decision declining to determine that justice does not require the enforcement of the forfeiture.  *See* 15 M.R.S. §§ 1003(1)(A), 1026(1), 1094; M.R.U. Crim. P. 46(a), (g).  We therefore conclude that, on the record before the court, it acted within its discretion in denying Covington's motion as to $17,815 of his deposited cash bail.

---

[6] The standard of proof applicable in *State v. LeBlanc-Simpson*, 2018 ME 109, 190 A.3d 1015, thus differed from the standard of proof here; that case involved a prosecution for the crime of violation of a condition of release, *see* 15 M.R.S. § 1092(1)(B) (2023), which requires a finding of guilt beyond a reasonable doubt, *see LeBlanc-Simpson*, 2018 ME 109, ¶¶ 15, 18, 190 A.3d 1015, whereas the court's decision whether to set aside Covington's forfeiture of bail money was discretionary, *see* M.R.U. Crim. P. 46(g)(2).

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Adrian Covington

Todd R. Collins, District Attorney, and Christiana Rein, Asst. Dist. Atty. (orally), 8th Prosecutorial District, Houlton, for appellee State of Maine

Aroostook County Unified Criminal Docket docket number CR-2020-34
FOR CLERK REFERENCE ONLY